The first matter is U.S. v. Michael Zomber. Are you ready to proceed? Your Honor, my name is Gerald Lefcourt. Most respectfully, may I reserve two minutes for a rebuttal? Your Honors, Mr. Michael Zomber appeals from his conviction in the District Court for conspiracy to commit wire and mail fraud and also consolidated with that appeal is his application pursuant to 2255 on the grounds of ineffective assistance of counsel and denial of Brady material. This case involved the defense saying in constant repetition that there is no obligation to explain anything and that Mr. Joseph Murphy, a collector of rare and antique firearms, got what he paid for, was very wealthy, and he bought all of this to serve his ego. No obligation to prove anything. This case, frankly, I will admit to you, and I haven't discussed it with my colleagues, but the case troubled me because it seemed like a civil case that had been morphed to the level of a federal prosecution. I couldn't quite figure out why it was a federal prosecution. But the more I thought about it, in terms of your argument, isn't it like kind of a fraud on the market case where someone buys some stock. They got exactly what they paid for. They bought 50 shares of General Motors stock. That's what they thought they were getting. That's exactly what they got. But because of fraud in the marketplace, the person was relying upon a certain set of falsehoods in buying the stock, ends up buying 50 shares, but is able to show that but for certain misrepresentations by the board, he or she would have to pay the kind of money they paid for. Isn't it the same kind of situation? It is the same kind of thing, except there's one additional thing. As Judge Roof said in her opinion post-trial on our motion when we came in post-trial, Rule 29,  this is agents' representations. Agents owe fiduciary duties. And so it would have been considered mere puffery, she said, perhaps, but these were representations of an agent. And here's the issue. There were representations of Zomber as well, weren't they? Yes, but Zomber was not the agent. The allegation was Mr. Murphy's agent was a Mr. Ellis. But Zomber did make specific misrepresentations that were calculated to induce Murphy to make the purchases. No question, Your Honor. Sort of like a real estate broker saying, you know, the apartment or the house is in contract with another seller, that type of representation. But what separated it was… More than that, Mr. Lefkowitz. I mean, he didn't just – the misrepresentations included specific misrepresentations about value, right? Yes, well, that somebody else was willing to pay a certain price. And in fact, he paid to have that misrepresentation made, didn't he? Well, actually, they owned the guns, so they would profit on the sale of the guns. So it was not a matter of being paid to make, you know, the misrepresentation. You received what could be considered something that was sold that was overvalued. Didn't he pay $25,000 to a gun dealer to write a letter stating that the value of the gun was more than, in fact, it was? Yes, that's a Mr. Sweeney. He's not a defendant in this case. But Mr. Zomber… That's like the fraud in the marketplace kind of analogy. Yes. Here's the thing. The defense attorney makes the argument we have no obligation to prove anything or to explain anything. But he did not know that there were three incredibly valuable pieces of evidence that would have changed the day. Because Mr. Murphy had agreed, unbeknownst to the defense attorney, according to the defense attorney, that Mr. Ellis was not his agent in a civil settlement. Mr. Lefkowitz, if you put the agency issue aside for a moment. Yes. Would the representations or misrepresentations made by Mr. Zomber be sufficient to allow the jury to convict for mail fraud? I don't believe so, Your Honor. Why not? And I don't think a jury would have if you're talking about caveat emptor and buyer beware and arms-length transactions. It's a pretty broad statute. All that requires is fraud, the use of the mails. Well, I don't think… And reliance on the fraudulent misrepresentations. I don't think there's anything definitive on it, Judge Fuentes. We argued post-trial that there would have been insufficient evidence if there's no agency. Judge Roof said, yes, it could have been mere puffery. But this wasn't seller's representations. This was agent's representations. We're getting back to that same point. Speaking for myself, I'm not really sure why the agency issue looms so large in your briefing. Because the bottom line is there's nothing in that statute that requires an agency relationship. Even if you, let's assume for the sake of discussion, you had ironclad evidence that Ellis denied he was an agent. By the way… Ellis did deny he was an agent and it wasn't… Ellis was in the possession of counsel. No. Two weeks in advance, wasn't it? No, Your Honor. I mean, I was under the impression that there was a deposition testimony that was in the possession… Oh, yes, yes, that's true. …of defense counsel clearly saying Ellis denied it. But then… And that was known. But then Ellis pled guilty. And during the course of his plea, the assistant U.S. attorney made a representation that Ellis was his agent. It was not contradicted at the plea. Now, you say it wasn't contradicted at the plea. But, of course, your opposing counsel is at pains to say that Ellis' lawyer specifically said, we don't accept that he was agent for all these transactions. Judge Rufin may not have understood that. You've quoted it… Well, she said she didn't understand it. Yeah. She didn't understand the plea, if that's what he was saying. But they've quoted the transcript, and it looks… I mean, unless you're saying that they fabricated the quote, the lawyer said… No, no, no. …we're not accepting that he's the agent for all these transactions. Judge Jordan, this is what Ellis' lawyer said at sentencing years after the trial, unbeknownst to Zomber's counsel. He said, the government well knew at the time of the indictment and Mr. Ellis' guilty plea that no agency or fiduciary agreement between Messrs. Murphy and Ellis existed. In fact, Mr. Murphy acknowledged in the settlement agreement that the parties' duties to each other were unclear and that there was no fraud, by the way. Also, moreover, Mr. Ellis and his lawyers told the government agents on numerous occasions that he was not an agent for Murphy. For some reason, the lone government document that captured information provided by Ellis during the course of his cooperation omits this important fact. Like Judge Jordan, I fail to see the relevance of agency in terms of a mail fraud statute. Well… Let me say this. Your Honor, it's the difference between a mere puffery. Are we going to criminalize all of the brokers in the world who make misstatements that people should be, just caveat, buyer beware? Are we going to criminalize all of those misrepresentations? The difference here is that it wasn't puffery if Ellis was an agent. It's not puffery if he is or isn't an agent. That's what's getting me. I mean, there's a difference between puffery and it's in the case law. It's in Supreme Court case law. It's one thing to say these are great guns. You should really want these guns. And it's another thing to say these guns are worth three quarters of a million bucks when you know they're worth a quarter of a million bucks because you acquired them a month ago for a quarter of a million bucks. How can you characterize that as puffery, Mr. Lefkowitz? Well, because that's the kind of thing that brokers and real estate transactions and other transactions do all the time. Somebody paid a dollar for a Picasso and it's now being sold for 30 million and it's worth that. You know, you're talking about antiques that are totally unique. Samuel Colt gave them to Samuel Walker, General Walker. It's not just inflating the price or having somebody pay a huge price or amount above what it's really worth. It's orchestrating the sale so that the buyer thinks that there's somebody else interested or the buyer thinks that somebody else owns the gun. It's deceiving the prospective purchaser through the mails. Is that what happens? With all due respect, that is the kind of thing that brokers do. You're saying it's not material. You're saying it's a misstatement, but it's not material. The thing that makes it material, Judge McKee, is the fact of a fiduciary duty. And indeed, in the summation of the prosecutor, he mentioned the word fiduciary or agent 30 times. The defense attorney, zero. No defense to that. Did the government have a case without the agency issue? I don't believe they do, Your Honor, but certainly it's a very different case. Look what we have now that was unknown at the time. Number one, there's a settlement agreement where Mr. Murphy says, I agree, there's no fraud, and our relationship and what duties were owed were unclear. Number two, government cooperator has told the government numerous times and never disclosed to the defense that he was not Mr. Murphy's agent. He maintained it through the day of his sentence. And the third thing is we have Mr. Murphy trying to sell those very guns, which he claims at the time he knew there was a fraud to Mr. William Gates, the head of the Microsoft Corporation, for what he paid. Where you cross the line between puffery and a misrepresentation. Let's say I'm selling used cars and I say this is the best car on the lot. I think you should buy it. I think that's puffery. Well, maybe the best car on the lot is a total lemon. I'm sorry? They're all lemons. Maybe the best car on the lot is a lemon. I tell you it's the best car on the lot, but it's not. I also tell you I've got somebody that's going to come and buy that car and is going to pay $10,000 for the car, but I'll give it to you first. Now, this is an imaginary buyer. You think that person should be arrested? It's an imaginary buyer. Now, did I not cross the line? No. I'm afraid that that is our society as we know it. Even this misrepresentation about this imaginary buyer? No, Your Honor. I think that really people understand what used cars, people understand what salesmen are doing to them. What they don't understand is when they have a relationship, a fiduciary relationship, that they're a lawyer or that they're an agent or that they're a broker. That's a whole different thing. Well, here's the remarkable thing. Your proposition is that our society is so rife with misrepresentations and lies that people should just expect to be lied to about the value of things that are presented to them, and they should expect to be lied to about the character of the sales transaction itself that other buyers are involved, and they should expect to have fabricated documents presented to them indicating that there are other buyers and that that's just the way life is and it's short of a fiduciary relationship. When the mail fraud statute says fraud, it doesn't include being lied to flat out. Your Honor, I think that the difference might be if there is a misrepresentation as to the nature or quality of the item, such as this Florida case which we've cited. How about the value of the item? Doesn't that go to the nature and quality? If I say this is worth four times what experts in the market say it is and what I know it is because I bought it at what is more regularly the market price. I understand what you're saying, Judge Jordan. The difference is that when you're dealing with antiques, you can't say the Walker 1009 and 1010 is really this price because it is a unique antique. There's not a market for antiques? There is a market. You're asserting that there's no such thing as a fair market value for antiques because they're unique, and that's just belied by the market that actually existed for these guns and that your client participated in because your client knew the value, acquired guns at the appropriate value, and then participated in misrepresenting that. Well, here's the thing. With Mr. Murphy, who's writing a book at the time with the foremost leading expert on Colt weapons, he's writing the book at the time he buys this. He is a rare collector, so for him to have these two guns that were presented by Samuel Colt to General Sam Walker, to him, where else is he going to get them? I mean, it's not like you can go somewhere else to buy them. There was no misrepresentation as to what they were. They were real antiques and the real deal. What you might say, unlike the Florida case where they said that the land was good land and it was swamp, that's a misrepresentation that goes to the actual what it is. This is what you'd really call puffery. But what was unknown to the – I mean, none of this was played out at the trial. We're playing it out here because we know now that Murphy said there was no agency. We know now that Ellis said he wasn't his agent. We know now, which the defense lawyer didn't know and had nothing to work with. Well, your defense attorney had a deposition. The defense lawyer at trial knew, based on the civil depositions, that there was no agency. Your Honor. Or asserted there was none. I have to point out, your clients were under oath in a civil deposition that there was an agency. No, Your Honor, not quite. Here's what happened at the pre-indictment stage. This is a year before the indictment. Well, I'm not sure what that timing has to do with anything. Well, because Mr. Murphy is threatening my client with a lawsuit, and he gives him a letter, which is in the record here, which says there's no reason for me to have any problems with you or to sue you. Will you participate in the deposition? And what my client says is that he thinks that Ellis wanted to be Murphy's representative. Not agent. Representative. He never used the word agent. So what he was saying, in order to get out from the civil suit, is fine. He knew he wanted to be his. Isn't the context of that quote a discussion of Mr. Wibler, if I'm saying the fellow's name right? Wibley. Leaving as agent and being replaced by Ellis. I mean, the very question was Wibley leaving as agent and Ellis replacing him. I'm not sure how. Yeah, I don't think that they were one right after another, but that was discussed during the course of the deposition. But Judge Jordan, here's a guy who is not the agent's number. He said, I think, and it's up to the jury as to whether there was a fraud, whether a fiduciary agent was involved in this case. None of that was presented to the jury, and it wasn't for two reasons. One is the ineffective assistance of counsel, if you will. You should have known this, that, and the other thing. But he said he never saw the settlement agreement. There was a hearing. The prosecutor said it was the most important document in the case. He went further and said when he got the settlement agreement from Ellis' lawyers, he thought whether he should prosecute at all. Would he have used that settlement agreement if he had it? I'm sorry? Would he have used the settlement agreement if he had it? No question. But the defense lawyer said he never had it. You say no question, but the lawyer said it would have been devastating to Mr. Zombers' case. Because he said that he thought that if he had had it, which he said I didn't, I may not have used it because I would be afraid that Mr. Ellis would come and testify. But what he didn't know was that Ellis agreed with the settlement agreement. But Ellis wouldn't have to come and testify. Wouldn't the government be able to get the terms of the plea agreement without his testimony? No. With the fact of the plea itself? No. Crawford has ruled that out. I mean, that's a confrontation issue. Why couldn't the government introduce the fact of Ellis' plea at Zombers' trial? Well, the United States against Crawford has ended that. Well, let's say Ellis was failed. There's no confrontation there. That's out. Say Ellis was available to testify and Ellis would have testified. Wouldn't the government, if that agreement had been offered by Mr. Zombers, wouldn't the government have produced Ellis to testify? No, they wouldn't have, Your Honor. What we know now, and we found out at Ellis' sentencing two years after the trial, is that he would have said I wasn't his agent. We didn't know that at the time. Well, the defense didn't know that at the time. I wasn't there, but the defense counsel didn't know that. But then you get the terms and conditions of the plea in the record, which is very, very prejudicial to Mr. Zombers. Well, it is exactly what Your Honor postured a moment ago, is that Mr. Ellis pled guilty to participating in misrepresentations to Mr. Murphy, but he denied always that he was his agent, but the defense lawyer didn't know that. It doesn't matter. I mean, if he took, before he used the term representative in a way to distance that and separate that from the meaning of agent, it doesn't matter. If he participated in it, be it as an agent or a better conspirator, agent, it doesn't really matter if the government can establish Zombers' role in misrepresenting the value of the gun. Two things. One is the mere statement by a seller that is not true of the like that Judge Fuentes outlined with the car dealer, which I think is totally appropriate. It would criminalize businesses across the country. Businesses every day have civil settlements with attorney generals for deceptive advertising. But we have more than that here. This would put them all in jail. We have a substantial sum of money being paid to generate a document that would mislead the buyer in terms of what the gun was actually worth. It seems to me this, and there's a line. I don't know where you draw it, and maybe we don't have to define where you draw the line here, but there is a point at which those things that the seller would do to jack up his or her expectation of profit transcends the line of deceit and intent to deceive and fraud. The issue is whether or not this factual pattern transcends that line. You're saying it doesn't. Your Honor, you may be right that there is some line somewhere. It's not spelled out in the cases, but what's clear here is we have a trial that wasn't fair because the jury thought from every witness, from the victim, from the experts, from the government's opening, from everybody, that there was an agency. The defense, not knowing that there was no agency, said we don't have to establish anything. There was no trial almost. What could have been done with the Gates letter? The Gates letter wasn't turned over until somehow after trial it came to light, I take it. Is that right? Yes. It came to light when the probation department reported it, and I saw it. I didn't know what the settlement agreement was. I had the defense. Not the settlement agreement. I'm talking about the Gates letter. Oh, yes. The letter to Bill Gates. That was turned over by Ellis's attorney. Yeah. What would have been done with the Gates? What use could that have been? What's the prejudice in not having had that? Well, I think that the Gates letters were substantial impeachment of Mr. Murphy along with other evidence. The Gates letters showed that he was willing to sell the guns that he claimed that he paid too much for, that he was defrauded in, for exactly what he paid for them. He didn't say to Bill Gates of Microsoft, you know what, this is the subject of a fraud, but, you know, if you're willing to pay for it, fine. So that's number one. But number two, he had also been at a gun show, and he had represented to people on tape, an investigator on tape, that the guns were worth more than he paid for them. So Mr. Murphy's credibility would be affected in one level, but much more than that on the agency question. He signed a document that said there was no fraud. He signed a document that said that whatever responsibility Ellis had to me is unclear. I understand that you like the settlement agreement. I'm trying to figure out about the Gates letter right now. Now you're on to the settlement agreement. Well, the Gates letter is pretty important. I mean, you know, he is trying to sell what he claims was the subject of a fraud. Was there a misrepresentation in the Gates letter? Yeah. He just says I'm going to sell it to you for what I paid for it. He said it was a phenomenal collection. You're making this statement about the value of this collection. That's what you call puffery. I agree. I agree. And you know what? The jury should have known about it. But all he says is I'd like to sell you my collection for what I paid for it. That's right. What's wrong with that? Which is the foremost collection in the world or whatever. You know, he didn't say, you know, how he got it, that he overpaid for it. Look, it goes to the same question as what would the jury have thought about this case if they knew that there was no agency and all the witnesses were asked things like, is it proper if you're an agent to do something like this? One after another. I understand you really like the agency point, but I think we understand your argument on that. Let me ask you about the standard we have to apply. Does the harmless error rule apply to the failure to turn over the Gates letter if it is Jenks? No. Your Honor, this is Brady material that constitutionally requires. You said Brady. The way it seems to me in my own mind, I think I don't get the case differently than you are arguing it, is that one of the things here that makes the misrepresentation material in the eyes of the jury is Murphy's statement that absent certain representation, he wouldn't have bought the document. Right. Had he known the true value of the guns, he wouldn't have bought them. Had he not had that letter that was paid $25,000 for telling him X value, he would not have paid that much for the gun. And then you have the government experts saying that there was a fraction of what he paid for. On the one hand, on the other hand, you have him trying to sell the gun for what he paid for it. So I guess you're arguing that the Gates letter goes to one, his credibility as a witness. No question. And the jury wouldn't believe him when he says, had I not gotten that letter, I wouldn't have paid for it because he's not willing to sell it for what he paid for it. What else does the Gates letter go to? Well, I think it goes to the whole question to me is whether the materiality aspect of the mail fraud statutes were met here by merely the misrepresentations. What makes this material to me, what makes this a crime if there was a fiduciary duty that was breached? Because that changes the whole quotient. What you're really arguing is that, and I don't know how this necessarily helps your point, but since mail fraud criminalizes the scheme, not the fruition of the scheme, when Murphy gets on the stand and there's a letter that he's trying to perpetuate a scheme to sell his collection at an inflated price to Bill Gates, at that point in time, it seems to me, under the government's posture in this case, he's guilty of mail fraud. And I think you'd agree with that. But that doesn't, because that's his scheme to defraud Bill Gates, but that doesn't mean that your client isn't guilty of mail fraud. It just means that Murphy is also guilty of mail fraud. And that's like the old aggravated assault cases where the person who wins the fight is the defendant. The person who loses the fight is the witness. It's the same situation. Yes, Your Honor. But what we have here is we're all assuming that the trial would have been the same with these things. I mean, here's a lawyer who stands up and says, I have no obligation to disprove anything. I don't have no obligation to explain anything. He had nothing to work with, nothing. And what was really withheld, namely Ellis saying I wasn't an agent, the Gates letters saying that Murphy did essentially the same thing, the settlement agreement where Murphy admits and signs a document saying there was no fraud. Well, what does the jury do with all that stuff? This Mr. Zomber, I've never seen such an unfair trial in light of what there was that never made it into the courtroom. I mean, and that's what we're dealing with here. We're dealing with a combination of government intentional failure to turn over Gates and Ellis's statement he wasn't an agent and the settlement agreement which the judge found was turned over. But the defense says he never got it. No appeal was taken. I mean, you say in a footnote in one of your briefs that it was clearly erroneous for the district court to say that Mr. Scuddy had the settlement agreement when he denied it up and down. Very troubling. Yeah, I'm wondering, maybe it's neither here nor there. If it was clearly erroneous, why wasn't that challenged? Well, we did challenge it. Is that on appeal here? Well, the conviction is on appeal. What we have here. It was clearly erroneous in the context of the ineffective assistance, the 2255 claim, because it didn't look like it was on appeal. Well, the whole hearing is on appeal. You know, if I could explain. My own view, Your Honors, is that the defense attorney never had that, but they both got on the witness stand, and it was a contest for who you believe. To me, you know, I did the hearing on behalf of Mr. Zomber. It was post-trial. To me, the prosecutor says it's the most important document in the case. I almost didn't prosecute before it, you know, because of it. Therefore, I know I sent it. There's no cover letter that says it's Brady or even refers to it. And his two other items that he didn't turn over, those they have no excuse about. The Ellis admission that there was no agency and the Gates letters. You know what? I don't know who to believe. But if you are Judge Roof. Assume that we agree that there's a basis in the record, whether we'd have found the same way or not. There's a basis in the record for the determination. Judge Roof went to the prejudice, went to prong two and skipped prong one in the Strickland analysis and said no prejudice. What's your position? Is it – I can guess your position, but let's put it on the record here in the argument. Is it ineffective to not know that you have that document in this context? The total amount of discovery in this case was a little over 100 pages. This constituted at least 17% of it. Right. And Mr. Goldman, the Assistant United States Attorney, said he sent two copies in that discovery package. I mean, how in the world can a defense attorney go to trial with a document like that, not know you have it, not review the discovery? So I'm accepting, you know, as the court apparently does, Judge Roof's ruling, that the defense attorney was unconvincing that he never received the document, but then he was totally ineffective. But your view is that that single document stating that there was no formal agency would have made – And no fraud. And no fraud would have made a difference in the verdict, that there would have been an acquittal instead of a – Well, I don't – I agree with the Assistant United States Attorney. It's the single most important document in the case that it caused him to hesitate on whether to prosecute at all, but that was not the only thing that was withheld. So yes, that alone would be enough, but if you couple that with the other Brady violations, which are constitutional – and it's Janks Act, the Gates letter. I mean, Mr. Murphy is talking about the very guns in the indictment. It's Janks Act. It's a violation of Janks and Brady. But when you put it all together – What's the date on the Gates letter? You have a copy of it? No, I have it right in front of me. December 21, 2000. Okay. Yes. Okay. Thank you. Those documents, again, were given to the United States Attorney by Mr. Ellis' lawyers, as was the settlement agreement. Can I ask you a question about your two appeals? I mean, hypothetically speaking, if you were not to prevail on your direct appeal and we were to address the deficient counsel argument that you raised in your habeas, what are you asking for? What is Mr. Zomber's current status? Unfortunately, Mr. Zomber has served his entire sentence. All right. So are you asking for a new trial? We are, Your Honor. There is an inappropriate restitution, which we address in one of the points, that's been ordered of $1.1 million based on a cost analysis plus 10 percent, which I would like to address if I have another moment. But clearly, a new trial would be what is appropriate, a trial in which a lawyer had all the material he should have had. Whether it's sufficient to the evidence or ineffective assistance under habeas, your remedy would be the same. Exactly. I mean, here's a trial that should have contained other things that are very crucial, that everybody admits were crucial. He runs quite a risk, though, doesn't he? Why is that, Your Honor? Well, because what if he's convicted? The sentence, there's no rule that says the sentence can't be harsher. I think there is. California against Pierce, unless there are new facts that if he went out and committed another crime, then the sentence could be, but you can't be punished for your appeal. And the Supreme Court has decided that a long time ago. And so there is no risk to him. Are there new facts that might emerge at trial that would alter the calculus of sentencing? Your Honor, if there are new facts from what I know about the case, they're going to be helpful to Mr. Sopper. And worse comes to worse, you know, notwithstanding the fact that I've made numerous bail applications, he has served a sentence. And what unfortunately, this restitution order in this case, we asked the court to determine the value of the guns now. Which is a curious thing. Why should your client get the benefit of the market increase? If one assumes for the sake of discussion, as I think we have to, that your client is a defrauder and guilty of a felony, that's at least the base for discussing what's a fair restitution. Why should the defrauder be the one who gets the benefit of a market increase? What's the logic of that? Your Honor, I think it is relevant to the question of whether Mr. Murphy is going to be made whole or to be made a multimillionaire because of the conviction. I mean, it's just relevant. Not because of the conviction. The question isn't the conviction. The question is, what happens in the marketplace and who gets the benefit of the market increase? Should the person who was the victim and bought the guns, should the buyer, the owner, get the benefit of the market increase? Of course they should. Or should the person who committed the fraud be the one who gets the market increase? Your argument is, measure the value of the guns now, and everything that's happened that might have increased the value of the guns in the interim, that should be to the benefit of the person who committed the crime. No, that wasn't what I said. Well, I'm not sure who else understands your argument. Well, number one, it's relevant as to what the value of those guns are. Number two, we argued that you shouldn't give a cost plus 10%. In this industry, in the industry of rare antiques, people— You're not answering the question about market value, though. No, no. When you decide your commission issue, talk about the value. I didn't say that he should get the benefit. What I said, it is relevant to determining a restitution number. Start with what is it—how much has this person been out of? Let's take a look at it. You'd still issue a restitution order. We asked the court to issue a cost plus 50%. Why? Because even though the markups with rare antiques are 100, 1,000%, we said 50% because Mr. Murphy, in this case, got guns that he marked up for 50%. He bought a gun for 400,000. He sold it for 600. One of the guns in this case. And so we're saying make a reasonable determination of restitution instead of— No, this could get into a really ironic situation because if you're right, you could get an assessment to come in of the current value of the guns, and they could be what he paid for them or more, in which case you could then argue there's no fraud because there's no loss. There's no harm because he got something which is now worth exactly what he paid for. I didn't make that argument, but I think the question— You could make the argument. In answer to Judge Jordan, the question of what the value of these guns are, we had a letter from the government's expert at the trial who said they were worth more than what he paid for them. But all I'm saying is that that is a factor that should have been considered. It would be awkward to say Mr. Murphy owed Mr. Zomber money, right? No. But that's where the logic drives you, right? No. It's just that you're a sitting judge. What should you consider on the question of restitution where the value may be X now or maybe it's more than what he paid when he himself has made sales with large markups, when the markups in the industry are not cost plus 10 percent, but they're— I thought the— That's all. I misunderstood as well. I thought that your argument was that the restitution should be based on the value at the time of sentencing rather than at the time of the wrongdoing plus the commission. All we were saying is that you have to consider really what the alleged victim lost. So start with that. Let's get a sense of what the value is. But that was your point. Yes. And once you get the sense of what the value is, then you should consider what kind of restitution is appropriate because obviously because they're valued now at this number, they may not have been valued at that number at the time. So come to a conclude, come to some determination of cost plus something. We said 50 percent. We thought that was very reasonable in light of the fact there was evidence that Murphy had sold at cost plus 50 percent. So, I mean, that's what the argument was about, but it's a very important matter obviously to the Zomber family. Are you going to reserve some time for rebuttal? Yes, I have. Thank you very much, Your Honor. Mr. Minnie? Good morning, Your Honor. My name is Joseph Minnie, Assistant United States Attorney, and I represent the government here this morning. Your Honor, if this case were simply about puffery and over-exaggeration of the sales price for these guns, we wouldn't be here today in a criminal context. What this case involves, Your Honor, is over-acts, misrepresentations, and the inducement for the sales of the price. But all pufferies goes to inducement. I mean, that's the reason for the pufferies, for inducement. Absolutely, Your Honor, but when that puffery involves or those statements involve deliberate misrepresentations, absolute lies, creating facts that are not true, not the facts that just don't exist, that aren't true. It goes beyond mere exaggeration and puffery, and it goes into the realm of fraud. Let me ask you this. Why wouldn't the Gates letter have been turned over? What is the justification for not disclosing and turning over the Gates letter? It's stated by AUSA Bob Goldman, Your Honor, at the 2255 hearing, is that he thought it was irrelevant. He thought it was immaterial. How can a document which goes to direct impeachment of the government's main witness, the victim in the case, where he says, had I known the guns were worth X, I wouldn't have bought them. And then you have a letter saying he would have sold them for exactly that, or if not more. How can that kind of impeachment possibly be irrelevant? It bothers my mind that you could say that that kind of a document could be irrelevant. It turns Murphy into someone who's doing exactly what Zombers on trial for doing. They're doing exactly the same thing for the same amount of money. You're saying it doesn't matter. Well, I really can't get it to Mr. Goldman's mind. I think what he was trying to say is that they were so collateral of a matter. How is it collateral? It goes to his integrity, his honesty, and what he thought the guns were worth. It's a document where if you take it on its face, it's Murphy evidencing and writing what the guns were worth to him. Your Honor, the fact that Mr. Murphy is offering those guns for sale at a certain price to Bill Gates doesn't necessarily mean that he truly believes that he paid, Mr. Murphy paid, true value. In other words, it's not saying Murphy believes that that's the true value of the guns for what he paid for them back then. But he's saying his testimony was that if he'd known what they were worth, he wouldn't have bought them. To me, it's pretty dramatic impeachment evidence. It would have been impeachment evidence, Your Honor. That could have been used against him. But the question is what effect on impeachment would that have against Joe Murphy? The record was clear. The judge made these findings. I believe in two opinions that Joe Murphy was a credible witness. Sure he was credible. Maybe he was real credible because nobody had stuff to shoot him with. Yeah, there was nothing to go after him with. He was very credible. Even if they had that eight charges of shooting him with it, it would have made a dent in his testimony and his credibility. Now that strikes me as utterly speculative. Mind-boggling to me. Why should we or any judge guess that a letter that, as Judge McKee points out, goes to the value of the guns at issue in the prosecution is something that the jury might not have taken seriously? First of all, does it really go to the value of the guns relating to the fraud? That's a curious statement because in order for us to accept that assertion, we'd have to say that there's no way that you could say, I'm selling this to you for what I got it for, doesn't include a very clear implicit statement of value. I mean, that's your position, right? That saying, I'm selling this for cost, has nothing to do with the statement about the value of the guns, right? Correct, Your Honor, yes. Okay. And I guess that's what's got Judge McKee and me shaking our heads. I don't understand how you can take the position that, I'll sell this to you for cost, doesn't include implicitly a statement about the value of the goods. I mean, you can argue, and you would argue no doubt to a jury, that that isn't how the jury should take it. But we're not here to guess what a jury should or shouldn't do necessarily. I mean, we have to kind of ask ourselves the question, particularly in the context of janks, whether that would have had some impact on the way the jury viewed the evidence that the government was putting forth. Look at that as a corrector, Your Honor. Mark, this again, that letter was a very collateral matter, and did it really, when you look at it... You know, saying today is Saturday doesn't make today Saturday. One of these high-tech watches gets a signal beamed down to it from Denver that tells my watch what time it is, so the dummy who's wearing the watch knows what time it is, what day it is, and all that, even just for daylight savings time. Now, if my watch were to tell me that today was Thursday, it wouldn't be Thursday, it would still be Monday. You're saying it's a collateral matter doesn't make it a collateral matter. It seems to me it's the same thing. You're telling us, Your Honor, it's Wednesday, it's Wednesday, it's Wednesday. It's still going to be Monday. So saying it's a collateral matter doesn't mean that it's a collateral matter when you've heard questions that would suggest to you, I would hope, that there's a real issue about both in terms of Brady and janks. The jury should have found out about what Murphy thought this gun was worth, and if he didn't think the gun was worth what he represented it worth in the letter, then there's an issue of impeachment, and the jury's going to hear this charge that you can believe all part or none of a witness' testimony, and if you find the jury has lied, the witness has lied about one matter or substance, you can, you don't have to, but you can't disregard everything that witness has said. You give a jury a charge like that after the witness has lied about what he thinks the gun is worth, and whether or not he would have bought it absent misrepresentations of value, your whole case is down to tubes because there's absolutely nothing to show harm or causation. I respectfully disagree with that because in light of the entire evidence of the record, you look at, you take this one document, this one letter, and look at it, and in many book reviews, if you really ask yourself that, it doesn't really call into question the fairness of the trial, and that's the standard that we have to look at. But certainly the letter, why couldn't the letter be used to show that Mr. Murphy was perfectly willing to pay what he paid for those guns and knew their value? Maybe they were worth less than he paid, but he was willing to pay for those guns when he paid for them. Sounds like he was quite content with his purchase. Your Honor, under the standard, the fact that it might have affected the outcome Let's talk about reasonable probability rather than might have. Let's talk about whether or not it's a reasonable probability that it would have affected the outcome. Use that phrase. You're saying there's not a reasonable probability that that kind of a letter would not have served to undermine Murphy's testimony in terms of the value, the absolute value, number one, the extent you can put absolute value on something like this, and more importantly, the value to him, whether or not he would have bought the guns had he known what they were really, quote, worth. I don't think it would have undermined Murphy's testimony, Robert. It may have given the jury an additional piece of information to consider in evaluating his overall credibility. But to say it would undermine credibility and actually adversely affect the government's case in chief, I don't think it would go that far. There was plenty of other evidence in the record, Your Honor, including Zomber's own statements. You had Martin Lane's testimony regarding the value of the guns. You have the letters. You have other evidence showing the fraud in this case. But even if that's the – see, because this is the kind of value here that's really a nebulous thing. The value here is what somebody would be willing to pay for. It boggles my mind that anybody would spend a million bucks for a 200-year-old gun. I don't care if it's a bazooka or a shoulder-to-air missile. I don't – $200 million or $100 million or a million dollars or something like that. It blows my mind. But if it's worth it to him to spend that kind of money, in terms of the fraud and the elements of fraud, you have to show that he spent more money for the gun than he would have absent the misrepresentations. And that was the whole thrust of his direct examination. And that's what he said on direct examination. If they can raise a reasonable doubt about that veracity of that testimony, then don't you have real problems in terms of the elements of mail fraud? That's just when the jury concluded, yeah, Zambra's a sleazebag, and he did some really low-down deceitful stuff here. But Murphy would have bought that gun for that amount of money absent the generated appraisal report, absent this testimony about whether or not he already owned the gun, absent all those misconceptions of fact. He would have bought that gun for that amount of money anyhow, because this was a gun that Mr. Colt gave to Mr. Walker, and it takes on something very, very special in the eyes of a gun holder because of that. You can't put a value on it. So he would have still bought the gun. Well, clearly these are quite unique guns. But Murphy was clear that had he known what the real value of the guns are, he would not have. Well, that's our whole point. He said that, but he's willing to sell them knowing what the value of the gun is. And as Judge Jordan said earlier, that's an implicit statement that he made in that letter as to what he thinks the guns are worth. And if it's not an implicit statement as to what the guns are worth, then you've got a witness who the jury may find not really worthy of belief. And if the witness is not worthy of belief, what you just said about his testimony isn't going to mean much because the jury is not going to accept his testimony. All right. Well, I think I get your position. If it's all right with Judge McKee, I've got a question about the 2255 aspect of the case. Would you disagree with the assertion of the trial counsel for the government that the settlement agreement was a very significant document? I mean, it's been pointed out by your opponent here, Mr. Lefkowit, that the AUSA said this was a dramatically important document, made him even question whether or not to indict the case. That seems to put some high importance on the settlement agreement. Does the government think that this is not a material document? In reviewing the element of materiality, we don't believe it falls under the issue of materiality. We can't take back his statements that he considered to be a very dramatic document, a very serious and important document. But when you look at it in light of the evidence in this case, this is not a document that should be fatal for purposes of representation issue in this case. Well, fatal isn't really the standard, right? So let's stick with the standard of materiality, which is, as Judge McKee pointed out, a reasonable probability that it could have affected the outcome. Here's a statement signed by the government's main witness, the victim in the case and the centerpiece of the prosecution, saying there's not a fraud here. In essence, there's not enough evidence here to say there's fraud. Now, a signed statement by the victim, the central witness in the case, saying no fraud. How can the government take the position, particularly in light of its own agent, the prosecutor's statement that this is a significant document, almost made an on-indict, is not a material document? That, I have to say, of everything in this case, that is the most mystifying to me. Straighten me out. Your Honor, in that context, the way you're on the report, yes, it is a material document. What was wrong about the way Judge Jordan stated it? So the way you put it, Judge, yes, material is a reasonable probability, but that's not the case. Why isn't that the case? I'm sorry, Your Honor. You said the way you put it, Judge, yes, it's a material document, but you suggested in that that Judge Jordan misstated the case and said this really is not as important as he put it to you in his question. Why isn't it? I'm sorry, Your Honor. I was looking at it in terms of materiality under the standard. It being a material document clearly was important under what Judge Jordan had said. Yes, I think the government would concede that it was a material document. All right. Well, if it's a material document, then doesn't that drive us to the understanding that the failure to know you have it? In the context of this case, now, here's what, really candidly, I wouldn't want, I'd be concerned about a rule that said in a case where you've got 15 CDs full of millions of documents, if you miss one of marginal materiality, you are, by law, ineffective. But let's take this case. There's 180 documents, according to the defense counsel, total turned over as discovery by the government. The settlement agreement constitutes 29 pages. It is, by the government's own prosecutor's admission, a dramatically important document. By Mr. Scuddy's statement, a dramatically important document. Is there any escaping, even though Judge Rufa didn't talk about it, is there escaping a conclusion that not knowing you've got it is ineffective? Because if there is, that I'm very interested to hear, if you've got a way to look at that and say that's not ineffective assistance. There are two prongs to strickling, Your Honor. I'm on the first one. Rule number two, is it prejudicial? You're saying it's material, but it's not prejudicial to, well, maybe I shouldn't make a, can we assume that it's beneath the level of professional responsibility to say that a lawyer did not use a document that was material to his defense? Can we assume that that makes out the first prong? Your Honor, this is creating a per se, well, I think it's a dangerous area to go into. Scuddy testified. Well, material, let me back up. Material in this context, helpful to the defense. If you've got a document that is helpful to the defense, so helpful that absent that document, your client would not even have been indicted, according to the prosecutor. Can we assume that the presumption of professionalism has been successfully rebutted to get past the first prong of strickling? Now, usually there would be a presumption that the attorney acted in a professional manner to get to his client's best interest, as you know, under the first prong. In this situation where we've now conceded that there is a material document that is in the defense attorney's possession that the attorney did not use and it is of sufficient gravity that the prosecutor said, you know, absent that case, I'm not even sure there's enough criminality to indict this thing and go before a grand jury. So if the prosecutor is not sure there's enough to get into conviction absent this document, the defense attorney has it and doesn't use it, can we get past the presumption of professional responsibility? Yes. Okay, so we're on prong two. Okay, thank you. That's the point. So now we're on to prong two. Good enough. Now we're on to prong two. We've all sort of agreed. We've got prong one nailed down, which is the one Judge Rufus sidestepped. Now, prong two, how is that not prejudicial? The study clearly testified, and this is where he was given the right credibility by Judge Rufus, Your Honor, if I had this document, I wouldn't have used it anyway. It was a two-step statement to the defense. It would have been right sound for the case. It would have resulted in the government bringing Ellis in to talk about his guilt and for him to talk about his fault. And that's where I did not want that to happen. Now, assume for the sake of discussion that that's what he actually said, although the record, I think, could be argued somewhat differently. I think the record could be argued to say that he said clearly in the morning before the lunch break, this is huge. This is the most important. I mean, it's dramatic. Quote, grab you by the throat, unquote. Knowing Mr. Scuddy, he probably didn't refer to the throat, but let's assume he would grab you by something. And then in the afternoon, he added a coda, which was, I should say I'm not certain I would use it because of the risk of Ellis taking the stand. That's a very different thing from saying I would definitely not have used it. But even if he'd said I definitely would not have used it, does his judgment about whether he would not have used it or not control whether this court could say there's prejudice in not using it? Because that's what we're coming down to. You're saying that his statement after the fact that I wouldn't have used it is sufficient all by itself to say no prejudice. Is that right? Yes, Your Honor. I think that it should control. He was there. Why would it control? It wouldn't control our analysis in terms of whether or not his decision not to use it is a denial of an effective assistance for counsel. We have to look at that and determine whether or not the letter creates a reasonable probability of a different outcome. And I think it's important for the court to consider that, though, because he's going to say, look, point blank, I'm saying, yeah, if I had this document, I probably would have used it anyway. He was adamant about that. And the record shows that the transcript, the hearing, the information that was provided there, he was clear about that. You're saying that his trial strategy would have been not to have used that document for cross-examination? He believed that within two words where he judged my case, that would have been too high a price to pay. But that doesn't prevent us from reviewing it and saying that he should have used it. It absolutely does not. All right. Well, I guess maybe you can help me with this. When you take the settlement agreement and put that together with the Gates letter, at least from my perspective, you know, the government has to prove this case beyond a reasonable doubt. And it's a different kind of case. It's not a case where someone stole a trainload of gold or something with a value that you can attach to it. It really goes to whether or not Murphy, because of Zomber's actions or his co-conspirator's actions, paid more for this gun than he otherwise would have, because who knows what it's worth. Clearly the gun is worth what a properly informed buyer would pay for it. And that's why I talked about fraud on the market earlier. If he would have paid for it anyhow and if we're then reduced to Alice's testimony that it wasn't fraud, at least but guilty of fraud, and you've got Murphy saying that he would have either sold – he thought the guns were worth X or he was going to try to rip somebody else off. And we have to wonder whether or not the jury would have been – the reasonable probability that 12 people would have had the same result with those two things. One person would have had a different interpretation. One person would have had a reasonable thought about this case. That's right. Well, this court should not take lightly the fact of overturning a jury verdict in this context. We don't. Don't worry about that. Well, Marcus, what is the fraud? You've got the letter being – the $25,000 being paid to generate the letter to create – to puff up – to build up the price of it. You've got the misrepresentation that he was going to get this gun when he really owned the gun. All those things go to what the gun would have been worth to Murphy. That's all – everything here, it seems to me, goes to what the gun would have been worth to Murphy, which seems to come back, at least in my little frail mind, to the Gates letter where Murphy is telling people what the guns were worth to him. But what's wrong with that analysis? If you've got a document where Murphy is saying this is what my collection is worth to me, does it matter if you've got somebody puffing up – he could have gotten them for less. Clearly, without the $25,000 to get the appraisal, he could have gotten them for less. No doubt without him believing that Zomber or Ellis was going to get this gun at a certain price, where the reality was that the gun was already in Zomber's possession or control and he didn't have to pay anybody to get it. There's no doubt that Murphy would have paid less for the guns, but that doesn't mean that the guns were not, nevertheless, in his own mind, worth what he paid for it. And that's kind of Mr. Lefkowitz's argument, which I'm not sure I buy totally, about he got what he paid for, basically. He got an antique gun, and it's a genuine gun. I may be oversimplifying it, but there's a kernel of an argument there that's kind of hard to overlook. He knew what he was getting. He paid more for it than it was worth. When you get into this kind of a market, it seems to me, you pay what it's worth to you. Joe Murphy paid for those guns. What he did, the amount that he did, solely because of the fraudulent misrepresentations made by Ellis and Zomber. Clearly, he was relying on their representations, their services, and because Ellis and Zomber were able to get closer and forge a relationship with him, he established credibility with them.  Although he may have had some reservations at first, these statements, whether it be a letter or the other statements that were made by Ellis and Zomber, showed that this is what solidified, this is what made the deal go, and that was the fraudulent misrepresentations. We have this evidence. We have Zomber's own sworn statement. Let me ask this, and this is a really dangerous question, but I ask it as a former prosecutor to a prosecutor. I always had this real screwed up notion when I was prosecuting, that my idea of what I was supposed to do, what I was paid to do, was to achieve a just result. I put the evidence, the admissible evidence, in front of the jury, and whatever verdict they came back with, I had done my job. If the guy got acquitted, the woman got acquitted, I had done my job. My job wasn't to get a conviction. Now, in the Supreme Court cases, which would support my view of the prosecutor's duty. Having said all that, what is the interest of the government in prosecuting someone without turning over the Gates letter, without turning over the settlement agreement, if there's a reasonable probability that those documents could have made a difference to the outcome of the case? Is it really in the government's interest to get a conviction against somebody if, had the jury known all which maybe they should have known, they would have come back with a different verdict? Your Honor, it's certainly in the government's interest, and the government is aware of this obligation, and it's in the government's interest, and it's our primary goal and interest to ensure that justice is done. That's what we get paid to do. And in this particular case, while it's difficult for me to go back, like I said earlier, to surmise what was in Mr. Goldman's head. Well, he's told us. He told us what was in his head. He said that the Gates letter was a collateral matter, and he used that phrase. It didn't really matter. And the release, he said, he sent. The job of the prosecutor in this instance is to evaluate the evidence as a whole. We're looking at the settlement agreement, albeit a very important, perhaps material document, Your Honor. That wasn't the entire case. Certainly, a settlement agreement is not binding on a prosecutor completing and performing a full-blown criminal investigation. Yeah, and I don't think anybody up here is suggesting that it shouldn't have been indicted. I'm certainly not suggesting that the matter shouldn't have been taken to trial, you know. And the government knows how the discussion and outcome of this case is going to go. We haven't conferred on it. But, you know, even if it goes against the government and there's a retrial, who's to say there shouldn't be a retrial? The only question we're dealing with is, was the trial that happened infected in some way that requires the matter to be retried? And that's, I think, important for everybody to understand. That's the focus of our questions. We're not trying to – I certainly am not trying to second-guess the decision to indict and prosecute Mr. Zomber. From all appearances, it looks like he's a fellow who was lying, and deliberately so, and trying to make a buck off of it. But that doesn't necessarily mean that a jury would have agreed that that was a criminal offense under the elements required, had they had all the material put in front of them. And that's the issue that your opponent has been advancing and that we've been trying to advance with you, too. Mr. Mitty, thank you very much. I think Mr. – we won't shoot you when the two minutes is up, but we let you take quite a bit of time over, as we did Mr. Mitty. So I'll try to rein in a little bit tighter on your rebuttal to the two-minute time limit. Because just the interplay of Mr. Mitty on what Scuddy would have done – and I must say I've never been in a holodeck to know what happened before lunchtime and after sleep. But what did Scuddy say? He said, if I had it, I may not have used it because that was what I had. He said that, and that's what Mr. Mitty has been told. But you know what? What Scuddy didn't know, and wasn't learned, is that Ellis was not willing to use it, that he was not able to use it. He knew that Ellis, when that had been turned over, that he wouldn't use it, or, as it should have, was not going to help Murphy with his argument that there was an agency that traditionally wouldn't use it. He knew that. His tactical decision made by guesswork at the time of Mr. Murphy. Wouldn't you tell a lawyer? Isn't a lawyer's tactical decisions in the heat of trial entitled to some consideration? There were questions that he didn't have the facts. He didn't know that Ellis agreed with the defense, so to speak, that there was an agency. He didn't know about Ace. And he didn't know that Murphy signed the document that said, no. But he said, if I had looked at the document, I would not have used it. Because he thought, if he read Ellis' plea, Mr. Goldman's case, that there was an agency that goes on to engage him. Reading about how Ellis represented Murphy and all of this, he thought that Ellis would testify. So that's why he said, as a tactical decision, if I had it, I may not have used it. That is unbelievable. How could we now say, in development, to rely on somebody who they claimed didn't need to discuss? Now they cite him as somebody, you know. Judge Ruff focused on the use of the word formal agency agreement in her decision. And she said that that doesn't discount the possibility of a de facto agency. It isn't. But, you know, all of that was something that should have been in front of the jury. The jury had to decide whether the statements made that caused Mr. Murphy to testify to the government material wasn't made by somebody who had some kind of fiduciary. It was all should have been before the jury. The jury never heard any of what we're talking about. Thank you. Thank you. That's a very interesting case, to say the least. I want you to think about a five-minute break before we call our final case today. Thanks. This is exceptionally well argued on both sides. Thank you.